IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA


DONALD NEIL WILKERSON,           )
Individually and as the          )
Administrator of the Estate      )
of Sandra H. Wilkerson,          )
deceased,                        )
                                 )
      Plaintiff,                 )
                                 )
      v.                         )          1:06CV00871
                                 )
TASHA CHRISTIAN,                 )
RITA MEDICAL SYSTEMS, INC.,      )
                                 )
      Defendants.                )


MEMORANDUM OPINION


OSTEEN, Jr., District Judge


      Plaintiff Donald Neal Wilkerson, as Administrator of the

Estate of Sandra Hatcher Wilkerson, deceased ("Mrs. Wilkerson"),

brings this diversity action against Defendants Tasha Christian

and RITA Medical Systems, Inc. ("RITA").[1] Plaintiff alleged the

wrongful death of Mrs. Wilkerson stemming from her medical

treatment at Duke University Medical Center in December 2002.

This matter is now before the court on Defendant Christian's

motion to dismiss pursuant to Rule 12(b)(5) of the Federal Rules

_____

[1] Plaintiff and his decedent are residents of Virginia.  Christian is a
resident of Florida.  RITA is a corporation existing under the laws of
California with its principle place of business also in California.

of Civil Procedure and both Defendants' motions to dismiss
pursuant to Rule 12(b)(6) of the Federal Rules of Civil
Procedure.  For the reasons set forth below, the court will deny
Christian's Rule 12(b)(5) motion to dismiss and grant both
Defendants' Rule 12(b)(6) motions to dismiss.

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Mrs. Wilkerson was diagnosed with liver tumors in 1995.  In
2002, she went to Duke University Medical Center for treatment.
On April 11, 2002, Dr. Clary, a general surgeon practicing at
Duke, performed surgery to remove the tumorous portion of her
liver.  Despite the surgery, a postoperative pathology report
indicated the existence of additional benign liver tumors.  Dr.
Clary and Dr. Nelson, a Duke-affiliated radiologist, determined
that the best course of action for Mrs. Wilkerson was an
ultrasound guided percutaneous radiofrequency ablation, a
procedure to burn the tumorous areas with an electrode.  Dr.
Nelson performed the ablation procedure on December 11, 2002.
Mrs. Wilkerson's liver failed within a week of the procedure,
requiring the performance of an emergency liver transplant.  The
transplant procedure was unsuccessful and Mrs. Wilkerson died on
December 17, 2002.

RITA was the manufacturer of the Model 1500X Electrosurgical
Radiofrequency Generator used in Mrs. Wilkerson's procedure.

2

Christian was a RITA sales representative.  At no time was Christian "licensed to practice medicine, nursing, or any branch or field of the healing arts in the State of North Carolina." (Am. Compl. ¶ 24.)  Plaintiff alleged that Christian personally performed the ablation procedure when she "operated medical equipment that was directly, by way of a continuous circuit, inserted into [Mrs.] Wilkerson's body."  (<u>Id.</u> ¶ 32.)  Plaintiff further alleged that Christian's operation of the Model 1500X Electrosurgical Radiofrequency Generator was "at the request and with the consent of Dr. Nelson."  (<u>Id.</u> ¶ 28.)  Plaintiff alleged that Christian neither wore an ID badge nor identified herself to Mrs. Wilkerson as a RITA sales representative rather than a licensed Duke employee.  Christian also allegedly failed to document her participation in the procedure in Mrs. Wilkerson's medical records.  Christian did not individually obtain Mrs. Wilkerson's consent to participate in the procedure.  RITA is alleged to be liable for the acts of Christian under the theories of <u>respondeat superior</u>, agency, master-servant, and right of control.

Plaintiff filed a complaint on October 4, 2006.  RITA filed a motion to dismiss on November 20, 2006.  Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, Plaintiff filed an amended complaint on November 29, 2006.  Defendant RITA filed a

motion to dismiss the amended complaint on December 13, 2006, as did Christian on January 15, 2007.[2]  The issues raised by the parties' briefs created some confusion regarding Plaintiff's specific claims.  However, Plaintiff's counsel clarified at argument that the amended complaint alleged only one cause of action for wrongful death.  This reading of the amended complaint is consistent with the Halifax County Circuit Court's certification/qualification of Plaintiff to serve as the administrator of the estate of Mrs. Wilkerson for the purpose of a wrongful death claim only.[3]

---

[2] Christian filed a motion to dismiss the initial complaint on December 8, 2006, despite Plaintiff's November 29, 2006, filing of an amended complaint.

 Defendants' motions to dismiss the amended complaint referenced and incorporated portions of the arguments set forth in their motions to dismiss the initial complaint.  Where "some of the defects raised in the original motion remain in the new pleading, the court simply may consider the motion as being addressed to the amended pleading."  6 Charles Alan Wright et al., FEDERAL PRACTICE AND PROCEDURE § 1476 (3d ed. 2007).  This court, however, will consider only the arguments which were first set forth in Defendants' motions to dismiss the initial complaint and then incorporated by reference into the motions to dismiss the amended complaint.

[3] The certificate of qualification states, "I, the duly qualified clerk/deputy clerk of this Court, CERTIFY that on March 31, 2003 Donald Neal Wilkerson, duly qualified in this court, under applicable provisions of law, as [x] administrator of the estate of   *********WRONGFUL DEATH CLAIM ONLY *********
                           **************************
Sandra Hatcher Wilkerson, deceased."  (Am. Compl. Ex. A. at 2.)

## II. ANALYSIS

### A. Christian's Motion to Dismiss - Rule 12(b)(5)

A defendant's motion to dismiss under Federal Rule of Civil Procedure 12(b)(5) challenges the sufficiency of service of process. Combs v. Bakker, 886 F.2d 673, 674-75 (4th Cir. 1989); Plant Genetic Sys., N.V. v. Ciba Seeds, 933 F. Supp. 519, 526 (M.D.N.C. 1996). "A court must grant a defendant's 12(b)(5) motion to dismiss if the plaintiff fails to serve a copy of the summons and complaint in satisfaction of Rule 4 of the Federal Rules of Civil Procedure." Calder v. Stanley County Bd. of Educ., 2002 U.S. Dist. LEXIS 20687 at *4 (M.D.N.C. 2002) (citing Link Group Int'l, L.L.P. v. Toymax (H.K.) Ltd., 127 F. Supp. 2d 280, 282 (D. Conn. 2000)). The party on whose behalf service of process is made bears the burden of proving its validity when challenged. Plant Genetic Sys., 933 F. Supp. at 526; 4A Charles Alan Wright et al., FEDERAL PRACTICE AND PROCEDURE § 1083 (3d ed. 2007). "Although the technical requirements of service of process should be construed liberally so long as the defendant has actual notice of the lawsuit, the mere fact of actual notice does not excuse plain noncompliance with process requirements." Calder, 2002 U.S. Dist. LEXIS 20687 at *4-5 (citing Way v. Mueller Brass Motors, Inc., 840 F.2d 303, 306 (5th Cir. 1988) and Tart v. Hudgins, 58 F.R.D. 116, 117 (M.D.N.C. 1972) (observing

5

that a liberal interpretation of process requirements "does not mean, however, that the provisions of the Rule may be ignored if the defendant receives actual notice")).  A dismissal for insufficient process is without prejudice.  Fed. R. Civ. P. 4(m).

Plaintiff may obtain valid service "pursuant to the law of the state in which the district court is located."  Fed. R. Civ. P. 4(e)(1).  Rule 4(j)(1)(c) of the North Carolina Rules of Civil Procedure permits service "[b]y mailing a copy of the summons and of the complaint, registered or certified mail, return receipt requested, addressed to the party to be served, and delivering to the addressee."  N.C. Gen. Stat. § 1A-1, Rule 4(j)(1)(c).  North Carolina General Statute § 1-75.10(4), regarding proof of service, permits the serving party to file an affidavit attesting:

> a. That a copy of the summons and complaint was deposited in the post office for mailing by registered or certified mail, return receipt requested; b. That it was in fact received as evidenced by the attached registry receipt or other evidence satisfactory to the court of delivery to the addressee; and c. That the genuine receipt or other evidence of delivery is attached.

N.C. Gen. Stat. § 1-75.10(4).  North Carolina General Statute § 1A-1, Rule 4(j2)(2) provides that when a defendant appears and challenges service, the section 1-75.10(4) affidavit

6

> together with the return or delivery receipt or
> copy of the proof of delivery provided by the
> United States Postal Service signed by the person
> who received the mail or delivery[,] if not the
> addressee[,] raises a presumption that the person
> who received the mail or delivery and signed the
> receipt <u>was an agent of the addressee authorized
> by appointment or by law to be served or to accept
> service of process or was a person of suitable age
> and discretion residing in the addressee's
> dwelling house or usual place of abode</u>.

N.C. Gen. Stat. § 1A-1, Rule 4(j2)(2) (emphasis added).  In

<u>Granville Medical Center v. Tipton</u>, 160 N.C. App. 484, 490-91

(2003), the North Carolina Court of Appeals discussed at length

the scope of the presumption created by Rule 4(j2)(2) where a

section 1-75.10(4) affidavit had been filed.  The court held that

Rule 4(j2)(2)

> contemplates merely that the registered or certified
> mail be delivered to the address of the party to be
> served and that a person of reasonable age and
> discretion receive the mail and sign the return receipt
> on behalf of the addressee.  A showing on the face of
> the record of compliance with the statute providing for
> service of process raises a rebuttable presumption of
> valid service.

<u>Granville</u>, 160 N.C. App. at 490-91.

Plaintiff filed the initial complaint on October 4, 2006.

On November 29, 2006, Plaintiff filed an affidavit of service in

compliance with North Carolina General Statute § 1-75.10(4).  The

"Certified Mail Receipt" indicates that service of process was

7

received at Christian's residence on November 20, 2006.[4]  This

affidavit is sufficient to raise the presumption of proper

service pursuant to Rule 4(j)(1)(c).  This presumption is not

rebutted by Christian's argument that her babysitter signed the

return receipt.  In <u>Granville</u>, the court considered near-

identical circumstances, holding that "the presumption arises

upon proof of delivery, regardless of the identity of the signer

. . . , [and that] [i]t can be assumed that [the signer] was a

person of reasonable age and discretion authorized to receive

registered mail and sign the receipt for defendant."  <u>Granville</u>,

160 N.C. App. at 491.

> We find no merit in defendant's argument that service
> was insufficient because the record does not show that
> it was made on a proper person.  It is a reasonable
> inference from the return receipt that the summons and
> complaint were delivered to a person who received the
> summons and complaint on behalf of defendant.  The
> summons itself was properly directed to defendant.  It
> can be assumed that the signer was a person of
> reasonable age and discretion authorized to receive
> registered mail and sign the receipt for the addressee.

<u>Id.</u> at 492 (internal punctuation omitted).

    "The presumption raised by production of such an

affidavit is rebutted only upon an unequivocal showing that

---

[4] Service of process, when obtained by certified mail pursuant to North
Carolina General Statute § 1A-1, Rule 4(j)(1)(c), "shall be complete on the
day the summons and complaint are delivered to the address."  N.C. Gen. Stat.
§ 1A-1, Rule 4(j2)(2); <u>Cline v. Fairbanks Capital Corp.</u>, 2004 U.S. Dist. LEXIS
9146 at *4-5 (M.D.N.C. 2004).

proper service was not made." <u>Cline v. Fairbanks Capital</u>
<u>Corp.</u>, 2004 U.S. Dist. LEXIS 9146 at *5 (M.D.N.C. 2004);
<u>Grimsley v. Nelson</u>, 342 N.C. 542, 545, 467 S.E.2d 92, 94-95
(1996). "To rebut, a defendant must provide 'affidavits of
more than one person showing unequivocally that proper
service was not made upon the person of the defendant.'"
<u>Moore v. Cox</u>, 341 F. Supp. 2d 570, 573 (M.D.N.C. 2004)
(quoting <u>Grimsley</u>, 342 N.C. at 545). Christian, having
submitted only a single affidavit attesting that the
certified mailing was received at her residence by the
babysitter, has failed to rebut the presumption and
unequivocally show that service of the complaint was not
made.

Plaintiff's amended complaint was filed on November 29,
2006. Rule 5(b)(2)(B) provides that service of additional
pleadings as required by Rule 5(a) may be accomplished by
"[m]ailing a copy to the last known address of the person
served. Service by mail is complete on mailing." Fed. R.
Civ. P. 5(a). By affidavit of December 4, 2006, Plaintiff
certified that a copy of the amended complaint was sent to
Christian's counsel on December 4, 2006. By affidavit of
January 26, 2007, Plaintiff certified that a copy of the
amended complaint was sent to Christian at her residence on

9

January 2, 2007. Plaintiff, therefore, has sufficiently shown that service of the amended complaint was properly affected upon Christian.

**B. Defendants' Motions to Dismiss - Rule 12(b)(6)**

Defendants submitted motions to dismiss pursuant to Federal Rule of Civil Procedure Rule 12(b)(6), asserting that the amended complaint failed to state a claim upon which relief can be granted. When analyzing a motion to dismiss for the failure to state a claim pursuant to Rule 12(b)(6), the court is not to decide if a plaintiff will ultimately prevail, but rather the court must assess whether the plaintiff "is entitled to offer evidence to support the claims." Revene v. Charles County Comm'rs, 882 F.2d 870, 872 (4th Cir. 1989). The pleading that sets forth the claim must be "liberally construed" in the light most favorable to the non-moving party and allegations made therein must be taken as true. Jenkins v. McKeithen, 395 U.S. 411, 421, 89 S. Ct. 1843, 1849 (1969). A plaintiff need not plead detailed evidentiary facts, and a complaint is sufficient if it will give a defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. See Bolding v. Holshouser, 575 F.2d 461, 464 (4th Cir. 1978). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does

10

not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Bell Atl. Corp. v. Twombly</u>, __ U.S. __, 127 S. Ct. 1955, 1965 (2007) (internal quotations and citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true (even if doubtful in fact)." <u>Id.</u>[5]

Defendants contend Plaintiff's pleading of a cause of action for wrongful death fails to state a claim because it is barred by the applicable statute of limitations. "The raising of the statute of limitations as a bar to plaintiff['s] cause of action constitutes an affirmative defense and may be raised by motion pursuant to Fed. R. Civ. P. 12(b)(6) if the time bar is apparent on the face of the complaint." <u>Dean v. Pilgrim's Pride Corp.</u>, 395 F.3d 471, 474 (4th Cir. 2005).

---

[5] The full reach and impact of the Court's retirement of the "no set of facts" language from <u>Conley v. Gibson</u>, 355 U.S. 41, 47, 78 S. Ct. 99, 102 (1957), in favor of a "plausibility standard" of pleading remains unclear. <u>See</u> <u>Anderson v. Sara Lee Corp.</u>, 2007 U.S. App. LEXIS 26723 at *19-20 n.7 (4th Cir. 2007); <u>Iqbal v. Hasty</u>, 490 F.3d 143, 155 (2d Cir. 2007).

The substantive law of North Carolina applies in this diversity action. <u>Limbach Co., L.L.C. v. Zurich Am. Ins. Co.</u>, 396 F.3d 358, 361 (4th Cir. 2005) (citing <u>Erie Ry. Co. v. Tompkins</u>, 304 U.S. 64, 78, 58 S. Ct. 817, 822 (1938)). The applicable statute of limitations is two years for a wrongful death action. N.C. Gen. Stat. § 1-53(4). "[T]he cause of action [for wrongful death] shall not accrue until the date of death." <u>Id.</u> In this case, Plaintiff's cause of action accrued on December 17, 2002, the date of Mrs. Wilkerson's death. Plaintiff's initial complaint was filed on October 4, 2006, after the running of the two-year statute of limitation.

## 1. Inapplicability of the Discovery Rule

North Carolina General Statute § 1-15(c), as enacted, allows a person damaged by latent injuries to file suit after the statute of limitations has run in certain circumstances. In enacting section 1-15(c), the General Assembly codified the common law discovery rule. <u>Black v. Littlejohn</u>, 312 N.C. 625, 630, 325 S.E.2d 469, 473 (1985) (citing <u>Johnson v. Podger</u>, 43 N.C. App. 20, 23 (1979)). In <u>Black v. Littlejohn</u>, the Supreme Court of North Carolina interpreted the term "injury" in section 1-15(c) to include "bodily injury resulting from wrongful conduct in a legal

12

sense." 312 N.C. at 646-47. Discovering a "legal" injury
includes discovering a potential defendant's identity or
"discovering [a] defendant's wrongful conduct or
negligence." Id. Though Plaintiff's cause of action is
based on professional negligence, the broad discovery-rule
provision of section 1-15(c) does not apply in a suit
seeking damages for a wrongful death. King v. Cape Fear
Mem'l Hosp., Inc., 96 N.C. App. 338, 341 (1989). The King
court first noted the familiar principle that as a creature
of statute, "any action brought for wrongful death must be
asserted in conformity with the applicable statutory
provisions." Id. at 341 (citing Webb v. Eggleston, 228 N.C.
574, 46 S.E.2d 700 (1948)). The King court, therefore,
refused to graft the discovery rule of section 1-15(c) onto
section 1-53(4), even when the wrongful death occurred
because of professional negligence (medical malpractice).
Id. (reasoning that because section 1-53(4), unlike section
1-15(c), contains "no discovery exception for latent or
nonapparent injuries, . . . [the] plaintiff was required to
bring her wrongful death claim within two years of the
deceased's death"). In Dunn v. Pacific Employers Insurance
Co., 332 N.C. 129, 133-34, 418 S.E.2d 645, 648 (1992), the
Supreme Court of North Carolina interpreted the second

13

provision of section 1-53(4). This provision "[p]rovided
that, whenever the decedent would have been barred, had he
lived, from bringing an action for bodily harm because of
the provisions of G.S. 1-15(c) or 1-52(16), no action for
his death may be brought." N.C. Gen. Stat. § 1-53(4). <u>Dunn</u>
first noted that "[t]he claim for wrongful death is distinct
and separate from the claim for bodily injury [and] [t]he
only relation between the two is that both the personal
injury and resulting death were allegedly caused by the same
wrongful conduct." <u>Id.</u> The Supreme Court of North Carolina
then held that

> [t]he three-year statute of limitations period for the
> bodily injury claim does not, however, trigger the
> running of, or cut short, the period for filing the
> wrongful death action when the underlying bodily injury
> claim of the decedent was not time-barred at his death.
> The proviso merely provides a limitations defense to a
> wrongful death action when the claim for injuries
> caused by the underlying wrong had become time-barred
> during the decedent's life.

<u>Id.</u> Under this interpretation, if a plaintiff's decedent were
barred by section 1-15(c), then the plaintiff cannot maintain a
suit for wrongful death regardless of the two-year statute of
limitations provided by the first provision of section 1-53(4).
Finally, in <u>Udzinski v. Lovin</u>, 358 N.C. 534, 537, 597 S.E.2d 703,
706 (1994), the Supreme Court of North Carolina followed <u>Dunn's</u>
reasoning and expressly held that the four-year statute of repose

14

of section 1-15(c) can bar a wrongful death claim grounded in
medical malpractice regardless of the two-year statute of
limitations provided by the first provision of section 1-53(4).
"[W]e conclude that the legislature did not intend for actions
premised on medical malpractice to be instituted more than four
years after the last allegedly negligent act, even when the
damages sought are for wrongful death."  Udzinski, 358 N.C. at
537.

This case is controlled by King v. Cape Fear Memorial
Hospital, Inc., 96 N.C. App. 338, 341 (1989).  Because the
wrongful death statute has no discovery-rule provision, it is
immaterial whether Christian's identity, or Plaintiff's knowledge
of the existence of a claim against Christian, was "not readily
apparent to the claimant at the time of its origin."  N.C. Gen.
Stat. § 1-15(c).  Plaintiff filed the initial complaint on
October 4, 2006, nearly four years after Mrs. Wilkerson's
December 17, 2002, death and nearly two years after the running
of the two-year statute of limitations for wrongful death.
Though Mrs. Wilkerson's claim for malpractice would not have been
barred on the date of her death, and thus Dunn is inapplicable,
Plaintiff's suit is barred by the statute of limitations.  N.C.
Gen. Stat. § 1-53(4).

## 2. Rule 12(b)(6) - Equitable Estoppel

Plaintiff contends the doctrine of equitable estoppel should preclude Defendants' pleading the statute of limitations. "The doctrine of estoppel by conduct -- estoppel <u>in pais</u> -- rests upon principles of equity . . . [and] is designed to aid the law in the administration of justice when without its aid injustice would result." <u>Hawkins v. M. & J. Fin. Corp</u>., 238 N.C. 174, 177, 77 S.E.2d 669, 672 (1953). "The lapse of time, when properly pleaded, is a technical legal defense. Nevertheless, equity will deny the right to assert that defense when delay has been induced by acts, representations, or conduct, the repudiation of which would amount to a breach of good faith." <u>Nowell v. Great Atl. & Pac. Tea Co.</u>, 250 N.C. 575, 579, 108 S.E.2d 889, 891 (1959); <u>Bryant v. Adams</u>, 116 N.C. App. 448, 459-60 (1994). The <u>Hawkins</u> Court set forth the elements of equitable estoppel in North Carolina, as follows:

> [T]he essential elements of an equitable estoppel as related to the party estopped are: (1) Conduct which amounts to a false representation or concealment of material facts, or, at least, which is reasonably calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party afterwards attempts to assert; (2) intention or expectation that such conduct shall be acted upon by the other party, or conduct which at least is calculated to induce a reasonably prudent person to believe such conduct was intended or expected to be relied and acted upon; (3) knowledge, actual or constructive, of the real facts. As related to the

16

> party claiming the estoppel, they are: (1) lack of
> knowledge and the means of knowledge of the truth as to
> the facts in question; (2) reliance upon the conduct of
> the party sought to be estopped; and (3) action based
> thereon of such a character as to change his position
> prejudicially.

<u>Hawkins</u>, 238 N.C. at 177-78. Plaintiff contends Defendants should be equitably estopped from pleading the statute of limitations to the wrongful death claim on three grounds: (1) Christian's conduct on December 11, 2002, six days before Mrs. Wilkerson's death; (2) Christian's continuing failure to document her participation in the medical records or to obtain Mrs. Wilkerson's consent "converted the medical records and consent forms into an inchoate and perpetual lie";[6] and (3) RITA's failure to file a form 3500A report to the Food and Drug Administration ("FDA") regarding Mrs. Wilkerson's death. The court will address each ground <u>a seriatim</u>.

### a. Christian's Antemortem Conduct

Plaintiff alleged that Christian concealed her identity on December 11, 2002, by failing to wear a name badge or distinguishing paraphernalia, failing to identify herself as a non-Duke employee, failing to document her participation in the medical records, and failing to obtain Mrs.

---

[6] (Pl.'s Mem. Supp. Resp. Defs.' Mot. Dismiss at 7.)

17

Wilkerson's consent to participate in the procedure. Plaintiff claims Christian did the above acts to deliberately conceal her identity and to prevent Plaintiff from discovering her participation in Mrs. Wilkerson's procedure.

Each of Christian's allegedly deceptive actions occurred six days before Mrs. Wilkerson's death. "Under the doctrine of equitable estoppel, 'the fraud consists in the inconsistent position subsequently taken, rather than in the original conduct.'" Friedland v. Gales, 131 N.C. App. 802, 808 (1998) (quoting Hamilton v. Hamilton, 296 N.C. 574, 576–77, 251 S.E.2d 441, 443 (1979) and H. McClintock, EQUITY § 31 (2d ed. 1948)). The subsequent inconsistency, which gives rise to equitable estoppel, is a defendant's pleading the statute of limitations after leading the plaintiff to "change his position prejudicially." Hawkins, 238 N.C. at 178. A plaintiff "change[s] his position prejudicially" when he refrains from filing suit, though legally entitled, because of the defendant's "false representation or concealment of material facts." Id.

By pleading the statute of limitations after leading a plaintiff to delay filing suit, the defendant asserts an inconsistent position that would, without equitable

18

estoppel, require the dismissal of the plaintiff's suit.  A
defendant's conduct cannot cause a plaintiff to delay filing
suit if no cause of action has accrued.  Accordingly, a
defendant's conduct before the accrual of a cause of action,
whether by misrepresentation or omission, is legally
insufficient to permit the court to estop a defendant's
pleading the statute of limitations.  See Duke v. Stainback,
320 N.C. 337, 341, 357 S.E.2d 690, 692-93 (1987) (equitable
estoppel applicable where defense attorney made inconsistent
statements after the plaintiff's cause of action accrued);
Matthieu v. Piedmont Natural Gas Co., 269 N.C. 212, 216, 152
S.E.2d 336, 340 (1967) (equitable estoppel inapplicable
where the defendant made no "representations that would have
led plaintiffs to refrain from suing or to change their
position"); Jewell v. Price, 264 N.C. 459, 462, 142 S.E.2d
1, 4 (1965) (equitable estoppel inapplicable where the
defendant did not promise to repair a defective furnace
after the cause of action accrued); Lewis v. N.C. State
Highway & Pub. Works Comm'n, 228 N.C. 618, 620, 46 S.E.2d
705, 707 (1948) (equitable estoppel inapplicable where the
defendant "did not request [for] the [plaintiffs] to delay
the pursuit of their legal rights" and the parties had no
agreement that the defendant "would not plead the statute");

19

<u>Wood v. BD&A Constr., L.L.C.</u>, 166 N.C. App. 216, 222 (2005) ("The cause of delay in filing in the instant action was not the defendants' representations . . ., but rather the plaintiffs' delay in discovering the other defects in the home."); <u>Hatcher v. Flockhart</u>, 161 N.C. App. 706, 710 (2003) (equitable estoppel applicable where defendant concealed which corporate entity was the real party in interest after cause of action accrued during settlement discussions); <u>Baker v. Showalter</u>, 151 N.C. App. 546, 548 (2002) ("A party seeking to rely on equitable estoppel must show that . . . he has changed his position for the worse.") (quoting <u>Griffin v. Griffin</u>, 96 N.C. App. 324, 328 (1989)); <u>Friedland</u>, 131 N.C. App. at 802 (1998) (equitable estoppel applicable where defendant's denial and false accusation occurred after the cause of action for wrongful death accrued); <u>Hayes v. Town of Fairmont</u>, 130 N.C. App. 125, 129 (1998) (equitable estoppel applicable where town's mayor and board members repeatedly claimed annexation ordinance had not been voted upon though mayor and board members had previously voted on and approved the ordinance in a "special session"); <u>Carl Rose & Sons Ready Mix Concrete, Inc. v. Thorp Sales Corp.</u>, 36 N.C. App. 778, 782 (1978) (equitable estoppel inapplicable because there was nothing "to indicate

20

that defendant induced plaintiff to forestall the initiation

of this lawsuit); <u>see also</u> <u>Nowell</u>, 250 N.C. at 575.  In

<u>Nowell</u>, the defendant promised to repair construction

defects both before and after the cause of action accrued.

The defendant confirmed the promise by repairing said

defects until six weeks before the three-year statute of

limitations period had run.  The North Carolina Supreme

Court noted that in addition to the plaintiff's reliance on

the defendant's promises, the plaintiff relied on the

defendant's performance of the promise and "did not sue

while efforts to correct the structural errors were under

way."  <u>Nowell</u>, 250 N.C. at 578-79.  In <u>Nowell</u>, the

subsequent inconsistent position that triggered equitable

estoppel was the defendant's pleading the statute of

limitations after repairing the construction defects for the

preceding three years.

By statute, "the cause of action [for wrongful death]

shall not accrue until the date of death."  N.C. Gen. Stat.

§ 1-53(4).  Accordingly, Plaintiff did not have a cause of

action until December 17, 2002, thus Christian's conduct on

December 11, 2002, could not have led Plaintiff to change

his position prejudicially by delaying the filing of his

suit.  Absent a misrepresentation or omission that leads a

plaintiff to change his position prejudicially after a cause of action accrues, a defendant's pleading the statute of limitations is neither subsequent nor inconsistent. Because "[i]t is the subsequent inconsistent position, and not the original conduct[,] that operates to the injury of the other party," Friedland, 131 N.C. App. at 808, Plaintiff's allegations that Christian concealed her identity on December 11, 2002, six days before Mrs. Wilkerson's death and the accrual of a cause of action, are insufficient to permit the court to apply the doctrine of equitable estoppel.

### b. Christian's Continuing Representations

Plaintiff argues that Christian's failure to document her participation in the medical records and her failure to obtain Mrs. Wilkerson's consent converts the medical records and consent forms into an inchoate and continuing omission, actionable until the records are corrected. For equitable estoppel to apply when a defendant's alleged inequitable conduct is silence or an omission, a plaintiff must allege that the defendant had a duty to speak. Thompson v. Soles, 299 N.C. 484, 487, 263 S.E.2d 599, 602 (1980); Integrated Healthcare Facilities, L.P. v. Wesley Long Cmty. Serv. Prof'l Office Bldg. P'ship, 1998 U.S. Dist. LEXIS 4052 at

22

*11-12 (M.D.N.C. 1998).[7]  The existence of a duty is a question of law.  <u>Davidson v. Univ. of N.C. at Chapel Hill</u>, 142 N.C. App. 544, 552 (2001) (citing <u>Pinnix v. Toomey</u>, 242 N.C. 358, 362, 87 S.E.2d 893, 897 (1955)); <u>see</u> <u>Foster v. Nat'l Christian Counselors Ass'n</u>, 2004 U.S. Dist. LEXIS 12365 at *6 (M.D.N.C. 2004) (citing <u>Davidson</u>, 142 N.C. App. at 552) ("Whether a duty exists is a matter of law.").  The North Carolina Court of Appeals, however, stated in <u>Mozingo v. Pitt County Memorial Hosp., Inc.</u>, 101 N.C. App. 578, 588 (1991), that

> when the facts are in dispute or when more than a single inference can be drawn from the evidence, the issue of whether a duty exists is a mixed question of law and fact.  The issues of fact must first be resolved by the fact finder, and then whether such facts as found by the fact finder give rise to any legal duty must be resolved by the court. . . . [However,] [w]hen there is no dispute as to the facts or when only a single inference can be drawn from the evidence, the issue of whether a duty exists is a question of law for the court.

<u>Id.</u>[8]  For the purpose of Defendants' motions to dismiss, the facts of this case are undisputed because all facts alleged

---

[7] At argument, Plaintiff conceded that Christian did not have a continuing duty to wear an ID badge or to identify herself to Mrs. Wilkerson as a RITA sales representative after the December 11, 2002, procedure.

[8] Though the <u>Mozingo</u> court did not describe the distinction between questions of fact and questions of law:  It appears that the factual question is often whether a physician/patient, fiduciary, or other confidential relationship existed between the parties.  The question of law for the court, then, is whether the relationship imposed any duties on the individuals and the scope of any imposed duties.

in the amended complaint are taken as true and all

inferences are drawn in Plaintiff's favor.  <u>McKeithen</u>, 395

U.S. at 421.  The relevant facts are these:

> (1) Christian was a sales representative, or sales
> distributor, for RITA.

> (2) As a sales representative, "Christian was not
> licensed to practice medicine, nursing, or any branch
> or field of the healing arts in the State of North
> Carolina."  (Am. Compl. ¶ 24.)

> (3) "Christian operated medical equipment that was
> directly, by way of a continuous circuit, inserted into
> [Mrs.] Wilkerson's body."  (<u>Id.</u> ¶ 32.)

> (4) Christian operated the generator "which provided
> the monopolar radiofrequency energy used for the
> coagulation and ablation of [Mrs.] Wilkerson's liver
> tissue."  (<u>Id.</u> ¶ 15.)

> (5) Christian "recklessly performed a medical procedure
> on [Mrs.] Wilkerson, at the request and with the
> consent of Dr. Nelson, but without the consent of
> [Mrs.] Wilkerson and without obtaining appropriate
> medical licensure in the State of North Carolina."
> (<u>Id.</u> ¶ 28.)

> (6) The monopolar radiofrequency energy created by the
> generator, operated by Christian, directly and
> proximately caused hepatic tissue necrosis, severe
> hepatic dysfunction, and then fulminant hepatic failure
> (total liver failure).

> (7) Mrs. Wilkerson died during an emergency liver
> transplant procedure performed because of the total
> liver failure.

<u>Id.</u>[9]  Accordingly, whether a relationship existed between

---

[9] Unlike the factual allegations above, Plaintiff's allegations that Christian
"had a duty to document her participation in [Mrs.] Wilkerson's medical
(continued...)

Christian and Mrs. Wilkerson, and whether said relationship imposed a continuing duty on Christian to obtain consent or document her participation in Mrs. Wilkerson's medical records, are questions of law for the court. Plaintiff makes two arguments in support of his position.

Plaintiff argues first that the North Carolina Medical Board's ("NCMB") position statement regarding medical record documentation subjects Christian to a continuing duty to document her participation in Mrs. Wilkerson's medical records.[10] The position statement advises that physicians and physician extenders should, as a matter of course, document "the services delivered--in full detail." NCMB, http://www.ncmedboard.org/ Clients/NCBOM/Public/NewsandForum/recdoc.htm (last visited February 13, 2008). The NCMB defines physicians as "persons who are MDs [(Medical Doctors)] or DOs [(Doctors of Osteopathy)]

_____

[9](...continued)
records" and "to obtain [Mrs.] Wilkerson's consent," are conclusions of law. (Am. Compl. ¶¶ 18, 20.)

[10] The NCMB was established "to regulate the practice of medicine and surgery for the benefit and protection of the people of North Carolina." N.C. Gen. Stat. § 90-2. The NCMB "is empowered to prescribe rules governing the licensure of applicants to practice medicine . . . [and to] develop rules to govern the performance of medical acts by registered nurses . . . [and] clinical pharmacist practitioners. N.C. Gen. Stat. § 90-6.

The NCMB regularly issues interpretive position statements "that attempt to define or explain the meaning of laws or rules that govern the practice of physicians, physician assistants, and nurse practitioners in North Carolina." NCMB, http://www.ncmedboard.org/Clients/NCBOM/Public/NewsandForum/whatpos.htm (last visited February 13, 2008).

licensed by the NCMB to practice medicine and surgery in North Carolina." Id. Because Christian was not alleged to be a physician, Plaintiff contends Christian was a "physician extender," who was required to document her participation in Mrs. Wilkerson's procedure. A "physician extender" is not expressly defined by the NCMB, the North Carolina Administrative Code, or the North Carolina General Statutes. The phrase appears to be convenient shorthand for individuals licensed in North Carolina as physician assistants, nurse practitioners, and clinical pharmacist practitioners. See id.; see also Evans v. Cowan, 132 N.C. App. 1, 3 (1999). Plaintiff alleged that "Christian was not licensed to practice medicine, nursing, or any branch or field of the healing arts . . . [and] held no licensure or board certification in a recognized field of medicine." (Am. Compl. ¶ 24.) As pleaded, Christian was not a physician extender and thus the NCMB's position statement regarding medical record documentation does not apply and did not require Christian to document her participation in Mrs. Wilkerson's procedure.[11]

---

[11] Even assuming arguendo that Christian was classified as a physician extender, Plaintiff provided no authority for the proposition that Christian had a duty to document her participation in Duke's medical records. The party claiming estoppel must rely "upon the conduct of the party sought to be stopped." Hawkins, 238 N.C. at 178. Absent a duty requiring Christian to document her participation in Duke's medical records, Plaintiff's alleged reliance on Christian's failure to document is sufficient to permit the court to apply the doctrine of equitable estoppel.

26

Second, Plaintiff contends that Christian's participation in Mrs. Wilkerson's procedure created a quasi-physician/patient relationship between the two. At argument, however, Plaintiff could not identify either the relationship created or the duties imposed by such a relationship. Nor could Plaintiff cite authority for the proposition that a non-medically-licensed sales representative enters a quasi-physician/patient relationship by participating in a medical procedure at the request, and with the consent, of a physician. The court appreciates the gravity of Plaintiff's allegation that a sales representative performed, or participated in, Mrs. Wilkerson's tumor ablation procedure. However, the absence of a legally cognizable relationship between Christian and Mrs. Wilkerson necessarily means that Christian did not owe Mrs. Wilkerson a continuing duty to obtain consent or document Christian's participation. Accordingly, Christian's failure to obtain consent or to document her participation in Mrs. Wilkerson's medical record is not an omission that Plaintiff could have relied upon to prejudicially change his position and delay the filing of his suit.

### c.  RITA's Failure to File FDA Form 3500A

This claim is specific to Defendant RITA. Plaintiff knew the RITA Model 1500X Electrosurgical Radiofrequency Generator would be used during the procedure, however, Plaintiff did not

27

know that a RITA sales representative would be operating the generator during the procedure. As noted above, the party claiming estoppel must rely "upon the conduct of the party sought to be stopped." <u>Hawkins</u>, 238 N.C. at 178. The amended complaint did not allege (1) that Plaintiff reviewed the FDA 3500A forms on file in search of information regarding the decedent's procedure, (2) that Plaintiff requested any FDA 3500A forms, or (3) that Plaintiff changed his position prejudicially because of RITA's failure to file an FDA form 3500A. Plaintiff did not allege that he relied, in any manner, on RITA's failure to submit an FDA form 3500A.[12] Absent an allegation of reliance on RITA's failure to file an FDA form 3500A, Plaintiff's contention that RITA should be equitably estopped from pleading the statute of limitations is unpersuasive.

### 3. Rule 12(b)(6) - Tolling the Statute of Limitations: Fraudulent Concealment

Fraudulent concealment is an equitable doctrine which can toll the running of the statute of limitations. Unlike equitable

---

[12] Plaintiff alleged that RITA (1) "had a legal duty and obligation to submit written notification of Ms. Wilkerson's death to the [FDA]," (2) failed to submit an FDA form 3500A, and (3) "deliberately and intentionally concealed" Christian's "direct participation" in Mrs. Wilkerson's procedure by failing to submit an FDA form 3500A. (Am. Compl. ¶¶ 39-41, 47.) Plaintiff subsequently alleged that "Plaintiff and Plaintiff's decedent relied to their detriment <u>upon the performance of [Mrs.] Wilkerson's percutaneous radiofrequency catheter ablation procedure</u>, which was performed on December 11, 2002 at [Duke]." <u>Id.</u> ¶ 42 (emphasis added). This allegation, however, does not allege reliance on RITA's failure to file an FDA form 3500A.

estoppel, which authorizes courts to preclude a defendant's
pleading of the statute of limitations, a tolling doctrine halts
the running of the statute of limitations to allow untimely suits
to be deemed timely filed.  The Supreme Court of North Carolina
has, by implication, approved of the doctrine of fraudulent
concealment as a tolling doctrine.  See Shearin v. Lloyd, 246
N.C. 363, 368-69, 98 S.E.2d 508, 512-13 (1957) (stating that
"[w]e need not consider the circumstances under which a
defendant's fraudulent concealment of material facts would toll
the running of the statute of limitations" because "plaintiff's
evidence was not sufficient to warrant [such] a finding");
Connor v. Schenck, 240 N.C. 794, 84 S.E.2d 175 (1954) ("[T]here
is no evidence whatever of defendant's fraudulent concealment . .
. as would operate to toll the running of the statute of
limitations."); Lewis v. Shaver, 236 N.C. 510, 513, 73 S.E.2d
320, 322 (1952) ("Whether the fraudulent concealment of the facts
by the tort-feasor constitutes an implied exception to the
statute . . . we need not now decide for the reason plaintiff
offered no evidence to support her allegation of fraudulent
concealment."); Stallings v. Gunter, 99 N.C. App. 710, 716 (1990)
(citing Connor, supra, for the proposition that "[f]raudulent
concealment can operate to toll the running of the statute of
limitation after the action has accrued").  The North Carolina

Court of Appeals has held that "[f]raudulent concealment may also operate to toll the statute of limitations where all the elements may be shown." <u>Friedland</u>, 131 N.C. App. at 807-08. <u>Friedland</u> indicated that fraudulent concealment can toll the statute of limitations where plaintiff can show "that the opposing party knew a material fact, and failed to fully disclose that fact in violation of a pre-existing duty to disclose." <u>Id.</u>[13]

Unlike equitable estoppel, fraudulent concealment can be grounded in inequitable conduct occurring prior to the accrual of a cause of action. In this case, however, Plaintiff has not alleged facts sufficient to support fraudulent concealment.

---

[13] Though no party has questioned the persuasiveness of <u>Friedland</u> or the existence of fraudulent concealment as an equitable tolling doctrine in North Carolina, this court notes some difficulty determining the jurisprudential foundation of both. <u>Friedland</u> relied on <u>Watts v. Cumberland County Hospital System, Inc. (Watts I)</u>, 317 N.C. 110, 115-17, 343 S.E.2d 879, 884-85 (1986), for the specific elements of fraudulent concealment. The decisions in <u>Watts I</u> and <u>Watts v. Cumberland County Hospital System, Inc. (Watts II)</u>, 317 N.C. 321, 345 S.E.2d 201 (1986), however, appear to use the phrase "fraudulent concealment" to describe a cause of action for actual fraud and not a tolling doctrine. Two factors lead to this conclusion.

First, the trial court found, and the North Carolina Court of Appeals affirmed, that plaintiff Watts' "medical malpractice claim was barred by the applicable statute of limitations, . . . [t]hus, this appeal does not deal with a cause of action sounding in negligence; it deals with a cause of action sounding in fraud." <u>Watts v. Cumberland County Hosp. Sys., Inc.</u>, 74 N.C. App. 769, 774, (1985) (emphasis added), <u>aff'd in part</u>, <u>rev'd in part on other grounds</u>, <u>Watts I</u>, 317 N.C. 110 (1986). Second, the damage caused by fraudulent concealment in the tolling context must be the plaintiff's failure to have timely filed suit. The damages in <u>Watts I</u>, however, were "years of aggravating, painful, and costly medical complications, as well as wage loss, familial distress, and unnecessary psychological counseling." <u>Id.</u> at 117.

The parties did not cite, nor was the court able to identify, a North Carolina decision that fully sets forth the elements of fraudulent concealment as a tolling doctrine.

Critically, Plaintiff has not alleged a legally cognizable duty which required Christian to (1) wear an ID badge, (2) identify herself as a RITA employee, (3) obtain consent, or (4) document her participation in Mrs. Wilkerson's medical records. Nor has Plaintiff alleged a duty that Christian breached by failing to perform the foregoing acts.

First, and for the reasons stated in Part II.B.2.b., Christian was not a "physician extender" and therefore owed Mrs. Wilkerson no duty, pursuant to the NCMB's medical documentation policy statement, to document her participation in Duke's medical records. Second, and for the reasons stated in Part II.B.2.b., Plaintiff failed, as a matter of law, to allege facts upon which this court could find the existence of a confidential relationship between Christian and Mrs. Wilkerson. The absence of a confidential relationship necessarily means that Christian was not duty-bound to disclose her participation in the procedure by wearing an ID badge, identifying herself as a RITA employee, obtaining consent, or documenting her participation in Mrs. Wilkerson's medical records. Accordingly, Plaintiff cannot contend that Christian failed to "fully disclose [a known material] fact in violation of a pre-existing duty to disclose." Friedland, 131 N.C. App. at 808.

31

RITA's alleged failure to file a form 3500A report with the FDA is not grounds for the application of fraudulent concealment. Even assuming, as Plaintiff alleged, that the federal regulations required RITA to submit certain information to the FDA, the duty RITA owed was to the FDA. Accordingly, RITA violated no pre-existing duty to Plaintiff to disclose this information when it failed to file a form 3500A report.

Fraudulent concealment, as used by the courts to toll the statute of limitations, is an equitable doctrine. Where a plaintiff does not allege reliance on the defendant's misrepresentations or omissions, the plaintiff does not allege an inequity necessitating the tolling of the statute of limitations. In this case, Plaintiff did not allege that he relied, in any manner, on RITA's failure to submit an FDA form 3500A.[14] This court therefore finds that on the facts alleged in the amended complaint, the doctrine of fraudulent concealment is not applicable to toll the statute of limitations.

Further assuming that RITA did owe Plaintiff a duty to disclose the information included in a form 3500A report, or that the duty to the FDA is also a duty owed to the general public, RITA's filing would not have disclosed the material facts of Christian's identity or participation. Federal Regulation 21

---

[14] See supra note 12.

32

C.F.R. § 803.11, even if applicable, would require RITA[15] to submit a report to the FDA of any individual adverse event that it became aware of "on FDA MEDWATCH Form 3500A[,] or in an electronic equivalent as approved under § 803.14." In completing form 3500A, RITA must complete Box D, Question 5., below:

```
5. Operator of Device
   ☐ Health Professional
   ☐ Lay User/Patient
   ☐ Other:
   _____
```

RITA's obligation is to disclose the generic position of the individual operating the generator and not their identity. Plaintiff cited no authority to support the conclusion that a properly filed form 3500A would have disclosed Christian's identity. Because RITA could have satisfied its reporting requirement without disclosing Christian's identity or participation, RITA's failure to file a form 3500A report with the FDA did not violate a pre-existing duty to disclose these material facts and fraudulent concealment is therefore inapplicable.

---

[15] RITA is a manufacturer, 21 C.F.R. § 803.3, and therefore has certain obligations under 21 C.F.R. § 803, et seq.

## III. CONCLUSION

Plaintiff alleged facts, in good faith, that raise serious questions regarding the propriety of sales representatives in the operating room. The gravity of Plaintiff's allegation that a sales representative performed, or participated in, Mrs. Wilkerson's tumor ablation procedure is not lost on this court. Though equitable estoppel, much like fraudulent concealment, "is designed to aid the law in the administration of justice when without its aid injustice would result," Hawkins, 238 N.C. at 177, the court in this diversity action is compelled to apply the law as provided by the jurisprudence of North Carolina.

For the reasons stated above, Christian's motion to dismiss the amended complaint pursuant to Rule 12(b)(5) will be DENIED. Because the court has determined that Plaintiff did not allege facts sufficient to either equitably estop Defendants from pleading the two-year statute of limitations or to toll the statute of limitations on account of Defendants' fraudulent concealment, Christian and RITA's motions to dismiss the amended complaint's sole claim for wrongful death pursuant to Rule 12(b)(6) will be GRANTED.

A judgment in accordance with this memorandum opinion shall be filed contemporaneously herewith.

34

This the 19th day of February 2008.

William L. Osteen, Jr.
United States District Judge